**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Windon, *et al.*, | No. CV-24-00494-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Home Depot USA Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Welding Cutting Tools & Accessories, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8, MTD), to which Plaintiffs Aaron and Susan Windon filed a Response (Doc. 14, Resp.) and Defendant filed a Reply (Doc. 17, Reply). Also at issue are Plaintiffs' requests for jurisdictional discovery and transfer of venue. (Resp. at 9.) The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss and Plaintiffs' request for transfer of venue.

**I.    BACKGROUND**

In the First Amended Complaint (Doc. 1-1 at 2–19, FAC), Plaintiffs allege the following facts. At the relevant times, Plaintiffs were residents of Arizona. (FAC ¶ 1.) Mr. Windon sustained a permanent eye injury while using a welding helmet that was produced by Defendant Welding Cutting Tools & Accessories (WCTA), an Ohio corporation. Plaintiffs claim that the welding helmet in question had a defect that stopped

the auto dampening lenses from dampening when Mr. Windon started welding. (FAC ¶¶ 35–38, 61.) Mr. Windon purchased the welding helmet from a Home Depot store in Queen Creek, Arizona. (FAC ¶ 32.) Plaintiffs have brought suit against WCTA, Home Depot U.S.A., Inc, and Tecmen Electronics Co. Ltd., raising four claims: strict products liability; negligence in design, manufacture, inspection, and distribution; negligence in failure to warn and recall; and loss of consortium.

        Plaintiffs allege Defendant WCTA "engaged in substantial commerce and business activity" in Arizona including "researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce . . . its products." (FAC ¶ 14.) This, however, is contradicted by the Declaration of the Vice President of WCTA, Tim Keller. Mr. Keller avers that WCTA did not design, manufacture, or assemble the welding helmet in question in Arizona. (MTD Ex. 1, Keller Decl. at 14.) Nor does WCTA directly market or advertise its products to customers residing in Arizona. (Keller Decl. at 23.) Moreover, WCTA does not have any offices, warehouses, plants, employees, leases, subleases, real property, or bank accounts in Arizona. (Keller Decl. at 8–10.) WCTA is not organized under Arizona laws or registered with the Arizona Secretary of State or the Arizona Corporation Commission and does not maintain a registered agent in Arizona. (Keller Decl. at 7.)

        WCTA does have a national distribution agreement with Home Depot to distribute its products. (Keller Decl. at 16.) WCTA also provides information to Home Depot about its merchandise to be used on Home Depot's website. (Keller Decl. at 23.) At times, WCTA ships orders placed by customers on Home Depot's website directly to the customers rather than to a Home Depot distribution center. (Keller Decl. at 19–20.) Typically, however, WCTA sends its products to a Home Depot distribution center and Home Depot sends the products to retail stores or to the customers who order online. (Keller Decl. at 18–19.) Home Depot controls and directs any direct shipment from WCTA to customers. (Keller Decl. at 20–21.) WCTA has no interaction with the individual customer before and during the purchase, and only on occasion does WCTA send the product to the customer at the

direction of Home Depot. (Keller Decl. at 20–21.) WCTA now moves to dismiss for lack of personal jurisdiction.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction by challenging the plaintiff's allegations, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of determination is left to the trial court." *Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a *prima facie* showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's

long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

Plaintiffs do not contend that the Court has general jurisdiction over Defendant, and Defendant argues it is not subject to specific personal jurisdiction in Arizona based on the facts giving rise to Plaintiffs' claims. Whether a court may exercise specific jurisdiction in a given case turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit uses the following approach to determine whether a court may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must do some act in or consummate some transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises

out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two requirements, the burden shifts to the defendant to establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

To meet the first element—that the defendant purposefully directed activities at the forum state—the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful availment analysis is used in product liability cases. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).

A defendant purposefully avails itself of the benefits of a forum if it has "deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'" *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King Corp.*, 471 U.S. at 475–76). Merely placing a product in the stream of commerce is not enough to satisfy the purposeful availment test if that product finds its way into a jurisdiction and a suit arises. *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987). There must be something more. *Id.* This "something more" standard for purposeful availment when using a distributor who places the defendant's merchandise into a forum is *not* satisfied by the defendant's awareness that the stream of commerce will sweep the product into the forum state. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022) (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459

(9th Cir. 2007)). The "something more" requirement can be satisfied by "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. A plaintiff can also prove that these acts amounted to more than just placing the products in the stream of commerce by showing that the defendant deliberately navigated the stream of commerce towards the forum state by "creat[ing], control[ling], or employ[ing] the distribution system*." Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (quoting *Asahi*, 480 U.S. at 1027).

**B.     Analysis**

To determine whether specific jurisdiction over Defendant lies, the Court inquires whether the submitted evidence shows there are sufficient minimum contacts such that Defendant purposefully availed itself of the forum state by entering into a national distribution agreement with Home Depot, which then sold the products to individuals in Arizona. The answer is no. Defendant simply entered into a national distribution agreement with Home Depot to sell its merchandise, and without more, the distribution agreement does not justify exercising personal jurisdiction over Defendant. Defendant does not advertise to consumers in Arizona and in no way targets Arizona residents through its online listing on Home Depot's website. Defendant also does not control, employ, or create the distribution system through which its product enters the state, as stated in the Keller Declaration. All interaction between WCTA's products and Arizonans is facilitated, encouraged, and controlled by Home Depot. Thus, WCTA has done nothing in the context of its distribution agreement with Home Depot to purposefully avail itself of the benefits of this forum for the purposes of specific personal jurisdiction.

The act of shipping directly to customers falls in the same category as the distribution agreement. All reach into the state of Arizona, including advertising, customer interaction, and transaction, was conducted under the control of Home Depot—the distributor. Defendant's activity was limited to shipping the merchandise to certain

individual customers in Arizona rather than the distributor, entirely at the direction of the distributor. Defendant placed its product into the stream of commerce when it entered into a distribution agreement with Home Depot, and shipping directly from Defendant to customers in the forum state does not amount to the "something more" required to purposefully avail Defendant of the privileges of conducting business in Arizona. Defendant's sporadic and minimal reach into the state by shipping directly to customers is not sufficiently deliberate and thus fails the purposeful availment standard.

Plaintiffs argue that placing an item in the stream of commerce in conjunction with the intent to serve the market in the forum state is enough to establish Defendant purposefully availed itself. (Resp. at 5.) But Plaintiffs fail to allege how Defendant had an intent to serve the specific market of Arizona. The intent of the distribution agreement was to serve a national market, not Arizona specifically. (Keller Decl. at 16–17.)

The application of the standard set forth in *Cybersell*, applied in *Chorost*, is not applicable here. The court in *Cybersell* specified the following standard for online commercial activity in a state:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity [the defendant] conducts over the Internet.

130 F.3d at 419 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In the present case, Home Depot is the entity conducting commercial activity over the internet, not WCTA. Defendant's commercial activity ceases once it places the product in the stream of commerce by way of Home Depot. How Home Depot then purposefully and independently interacts with Arizona is not relevant to the specific personal jurisdiction over WCTA. And, as stated above, shipping to certain customers directly at the sole direction of Home Depot—as opposed to shipping to Home Depot—is not enough to overcome the stream of commerce standard and bestow specific personal jurisdiction over Defendant.

Because Plaintiffs do not show Defendant's acts satisfy the purposeful availment standard, the first element necessary to establish specific personal jurisdiction is lacking and the Court need not consider the subsequent elements. The Court lacks personal jurisdiction over WCTA in this matter.

**III.   PLAINTIFFS' REQUESTS**

    **A.   Request for Jurisdictional Discovery**

Plaintiffs ask to be able to conduct jurisdictional discovery (Resp. at 9), but do not adequately demonstrate what material facts they anticipate such discovery will reveal—that is, what conduct Defendant engaged in that purposefully availed itself of the benefits of the State of Arizona. The discovery Plaintiffs ask for is either answered by the Keller Declaration or immaterial to the question of specific personal jurisdiction. The Court will deny the request.

    **B.   Request for Transfer to the Northern District of Ohio**

In response to Plaintiffs' alternative request (Reply at 9), the Court will transfer the claims against WCTA to the Northern District of Ohio. 28 U.S.C. § 1631, which addresses the Court's transfer of a case to cure want of jurisdiction, authorizes the Court to transfer this case to "any other such court in which the action . . . could have been brought at the time it was filed." Venue is proper where "any defendant resides" or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The Ninth Circuit has set forth a multi-factor test to determine if transfer should be granted. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Because no party opposes transfer, and all factors weigh in favor of transfer, the Court will grant Plaintiffs' request for transfer

to the Northern District of Ohio. In doing so, the Court must sever Plaintiffs' claims against WCTA, and the claims against the other Defendants will remain pending in this Court.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8).

**IT IS FURTHER ORDERED** severing Plaintiffs' claims against Defendant Welding Cutting Tools & Accessories, LLC, and directing the Clerk of Court to transfer those claims to the District Court for the Northern District of Ohio as soon as practicable.

Dated this 29th day of May, 2024.

Honorable John J. Tuchi
United States District Judge